IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UTILITY CHOICE, L.P. d/b/a § | |
| UTILITY CHOICE ELECTRIC, and § | |
| CIRRO GROUP, INC. d/b/a CIRRO § | |
| ENERGY CORPORATION, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. H-05-573 |
| § | |
| TXU CORP. d/b/a TXU ENERGY, § | |
| et al., § | |
| § | |
| Defendants. § | |

ORDER

Pending before the Court is Defendants' Motion to Dismiss (Document No. 131). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part.

BACKGROUND

Plaintiffs Utility Choice Electric and Cirro Energy Corporation (collectively "Plaintiffs") are two separate and unaffiliated retail electric providers that provide electric service in Texas. Defendants consist primarily of power generation companies and retail electric providers in the Texas energy market. The Texas energy market includes two segments (collectively "market"). In the bilateral contract segment, energy is purchased via contractual agreements. In the spot or BES segment, offers to

sell and purchase are matched by a clearinghouse to balance supply and demand.[1] The Public Utility Commission of Texas ("PUCT") regulates the markets.[2]

In Plaintiffs' 222 page Restated Second Amended Complaint, they assert twenty-two causes of action against Defendants. Plaintiffs' federal claims include: Racketeer Influenced and Corrupt Organizations Act ("RICO") claims; claims under § 1 of the Sherman Act, 15 U.S.C. § 1, based on conspiracy to restrain competition and price fixing; claims under § 2 of the Sherman Act, 15 U.S.C. § 2, based on monopolization, attempted monopolization and conspiracy to monopolize; and claims for violations of the Clayton Act, 15 U.S.C. § 15.[3] Generally, Plaintiffs allege Defendants unlawfully cornered and conspired to monopolize and manipulate prices is the Texas energy market.

On August 11, 2005, Defendants moved to dismiss Plaintiffs' complaint for failure to state a claim. Specifically, Defendants assert that all Plaintiffs' claims, except one, are barred by the filed rate doctrine. They also assert that the claim not barred by

---

[1] The spot market is sometimes referred to as the balancing energy or "BES" market.

[2] As the detailed workings of the regulation of the Texas energy market can be found in *Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005) and *Texas Commercial Energy v. TXU Energy,* No. CA NO. C-03-249, 2004 WL 1777597 (S.D. Tex. June 24, 2004), the Court need not recite the details of the market's operations or oversight here *ad nauseam*.

[3] Plaintiffs remaining claims allege Texas state statutory and common law violations.

the filed rate doctrine is barred by the *Noerr-Pennington* doctrine.

## STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). It must appear beyond doubt that the plaintiff is unable to prove any facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must be stated with sufficient clarity such that a court or an opposing party can determine what claims are alleged. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). The allegations in plaintiff's complaint are taken as true, and the complaint is construed in a light most favorable to the plaintiff. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585-86 (5th Cir. 1999); *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). However, conclusory allegations or legal conclusions are not sufficient to overcome a motion to dismiss. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). The district court examines the complaint to determine whether the allegations provide relief on any possible theory or claim. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

## LAW AND ANALYSIS

Filed Rate Doctrine

Defendants argue that Plaintiffs' claims, with one exception, are barred by the filed rate doctrine.[4] The filed rate doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577 (1981). Stated another way, "[t]he filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *Tex. Commercial Energy* v. *TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005)(citing *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409 (1986)). "Application of the filed rate doctrine in any particular case is not determined by the culpability of the defendant's conduct or the possibility of inequitable results." *Marcus v. AT&T Corp.,* 138 F.3d 46, 59 (2d Cir. 1998). The United States Court of Appeals for the Fifth Circuit has held that the filed rate doctrine bars claims for damages stemming from rates approved by the PUCT in the Texas energy market. *See Tex. Commercial Energy*, 413 F.3d at 509-10.

---

[4]Defendants acknowledge that Plaintiffs' allegations that the Reliant Defendants (collectively "Reliant") engaged in improper dealings with the Texas General Land Office ("GLO") do not fall within the ambit of the filed rate doctrine. This allegation will be discussed independently. Accordingly, Plaintiffs' claims relating to the Reliant/GLO relationship are not implicated when the Court discusses the application of the filed rate doctrine to the remainder of Plaintiffs' federal claims.

*TCE* Decision

The Court's analysis of whether Plaintiffs' claims are barred by the filed rate doctrine must necessarily begin with an examination of *Texas Commercial Energy v. TXU Energy* ("TCE"). In *TCE*, the plaintiff, a retail energy provider, filed suit in the United States District Court for the Southern District of Texas alleging violations of §§ 1 and 2 of the Sherman Antitrust Act, the Clayton Act, and multiple state court claims stemming from defendants' alleged manipulation of the Texas energy market to create substantial price increases.[5] *See Tex. Commercial Energy v. TXU Energy, Inc.*, No. CA No. C-03-249, 2004 WL 1777597, at *6 (S.D. Tex. June 24, 2004). Defendants moved to dismiss plaintiff's claims based on the filed rate doctrine. *Id.* The district court, upon analyzing PUCT's structure, oversight, and authority, determined that the filed rate doctrine barred TCE's federal and state antitrust claims and certain state claims. *Tex. Commercial Energy*, 2004 WL 1777597, at * 10-14.

---

[5] The *TCE* plaintiff's § 1 Sherman Act claims alleged defendants "engag[ed] in economic withholding, physical withholding, and market manipulation." *Tex. Commercial Energy*, 2004 WL 1777597, at *6. Here, Plaintiffs' claims include conspiracy to restrain competition and price fixing under § 1 of the Sherman Act. TCE's claims under § 2 of the Sherman Act alleged violations based on "exercising monopoly power, attempting to monopolize, and/or conspiring to monopolize." *Id.* In the case at bar, Plaintiffs' claims under § 2 of the Sherman Act allege monopolization, attempted monopolization and conspiracy to monopolize. Hence, the federal antitrust claims in *TCE* and the case at bar are indistinguishable for the purposes of determining whether the filed rate doctrine bars claims for damages under the Sherman Act and Clayton Act.

On appeal, the Fifth Circuit affirmed the district court's dismissal. *Tex. Commercial Energy*, 413 F.3d at 509-10. The Fifth Circuit rejected TCE's argument that the filed rate doctrine is inapplicable to the BES markets because BES rates are not "filed" with the PUCT the same way rates are required to be filed with PUCT's federal counterpart, the Federal Energy Regulatory Commission ("FERC"). *Id.* In doing so, the Fifth Circuit analyzed PUCT's oversight of the BES market and determined "PUCT's oversight over the market is sufficient to conclude that the BES energy rates are 'filed' within the meaning of the filed rate doctrine." *Id.* at 510. Central to the Fifth Circuit's determination that the filed rate doctrine barred TCE's claims was the court's reliance on case law analyzing the application of the filed rate doctrine to markets where FERC has employed market-based rate setting.[6] *See id.* at 509. Thus, the court ostensibly accepted the analogous body of case law wherein the filed rate doctrine has been held to bar claims for damages relating to rates in markets governed by FERC. *See id.* ("[w]e agree with the approach taken by other circuits who have addressed this

---

[6] Although the *TCE* case involved the spot or BES markets, PUCT has similar responsibility to monitor the bilateral segment of the market. PUCT has enacted reporting rules governing the bilateral market to "[i]mprove the commission's ability to investigate allegations of market power abuse and anticompetitive behavior that may arise with respect to the wholesale electricity market." PUCT Subst. R. § 25.93(d)(2). It would be paradoxical to conclude that the spot market portion of the Texas market is subject to judicial oversight of rates while the bilateral segment is not and vice versa. Thus, the Court reasons that the only way it can reach the conclusion that the filed rate doctrine does not bar claims in the bilateral segment is to conclude that the filed rate doctrine is inapplicable to the spot market.

issue in the context of rates filed with the PUCT's counterpart, FERC.").

<u>Plaintiffs' Federal Claims</u>

As this Court's jurisdiction is predicated upon federal question jurisdiction, the Court will begin its analysis with an examination of Plaintiffs' federal claims. Despite the Fifth Circuit's holding in *TCE*, the Plaintiffs at bar argue their federal antitrust claims for damages are not precluded by virtue of the Fifth Circuit's decision in *TCE*. They essentially argue that the Fifth Circuit left open certain avenues through which this Court can navigate to reach the determination that the filed rate doctrine does not bar Plaintiffs' claims for damages. Specifically, they argue that the Fifth Circuit failed to address whether: 1) the lack of a substitute mechanism for recovery makes the filed rate doctrine inapplicable; 2) whether the implication doctrine applies; and 3) whether the filed rate doctrine violates the Texas state constitution. As will be discussed below, the Court determines that adoption of any of these arguments would result in a ruling squarely in conflict with the ruling in *TCE*.[7] Accordingly, all these arguments must fail.

*1. Substitute Mechanism for Recovery.*

---

[7]The Court notes that Plaintiffs spend much time in their response to the motion to dismiss arguing that the Fifth Circuit wrongly decided *TCE*. This Court, however, will not revisit Plaintiffs' arguments previously rejected by the Fifth Circuit.

Plaintiffs argue that for the filed rate doctrine to bar their claims for damages, there must be an alternative mechanism that allows them to recover damages from Defendants for their wrongful conduct. They argue that the PUCT's lack of authority to order disgorgement of profits and lack of power to refund profits derived from wrongful conduct necessarily makes the courts the only place Plaintiffs can seek such remedies.[8] Plaintiffs rely on the United States Supreme Court case of *Keogh v. Chicago N.W. Ry. Co.,* 260 U.S. 156 (1922) as primary support for their argument that an alternative damages mechanism is necessary for the filed rate doctrine to bar claims for damages. However, *Keogh* does not state that an alternative damages mechanism is required, but rather indicates that the plaintiff in that case could have recovered damages through agency proceedings. *See id.* at 162. Thus, the holding of *Keogh* is not as broad as Plaintiffs suggest. Moreover, subsequent decisions indicate that an alternative damages mechanism is not required for claims to be barred by the filed rate doctrine. *See Taffett v. Southern Co.,* 967 F.2d 1483, 1492 (11th Cir. 1992)(noting that filed rate doctrine barred RICO claims, despite the fact that state public service commissions could not order refund of excessive rates); *Wegoland, LTD v. NYNEX Corp.,* 806 F. Supp. 1112, 1120 (S.D.N.Y. 1992), *aff'd* 27 F.3d 17 (2d Cir. 1994)

---

[8]Defendants do not dispute that the PUCT lacks the authority to grant Plaintiffs the monetary damages sought.

("availability of adequate administrative relief has never been a prerequisite to applying the filed rate doctrine"). Accordingly, the Court determines a substitute mechanism for recovery is not a necessary prerequisite to applying the filed rate doctrine to Plaintiffs' federal antitrust claims.

*2. Implication Doctrine and the Texas Constitution Arguments*

Plaintiffs make two additional arguments that were not specifically addressed by the Fifth Circuit in *TCE*. The first argument is that the "implication doctrine" requires the Court to find that the Texas legislature intended injured parties to be able to sue for damages for violations of PURA. However, the Court must reject this argument as it applies to Plaintiffs' federal antitrust claims because it runs afoul of the Fifth Circuit's holding in *TCE* that claims for damages are barred under federal antitrust statutes. *See Tex. Commercial Energy*, 413 F.3d at 509-10.

Plaintiffs next argue that the Texas constitution requires open courts and a jury trial on Plaintiffs' claims. Although Plaintiffs' argument is far from pellucid with regard to how the Texas constitution relates to the filed rate doctrine's bar on federal claims for damages, Plaintiffs appear to premise their argument on an assertion that the filed rate doctrine's applicability depends on Texas law. However, this argument also conflicts with the Fifth Circuit decision in *TCE,* which examined the statutes underlying the PUCT's authority to reach its determination that the filed rate doctrine barred

9

TCE's federal antitrust claims. *See id.* Accordingly, Plaintiffs' Texas constitutional argument fails.

RICO Claims

In addition to federal antitrust claims, Plaintiffs assert federal claims under RICO. However, Plaintiffs' RICO claims, which allege Plaintiffs were damaged by paying artificially high prices, must be dismissed because they challenge the rates paid, and are thus barred by the filed rate doctrine. *See Taffett,* 976 F.2d at 1489.

*Noerr-Pennington*

Plaintiffs assert federal claims against Reliant averring Reliant interfered with Plaintiffs' business "relationships by having engaged in and by continuing to engage in intentional and anticompetitive fraudulent acts, participating in illegal contracting, covertly giving material and improper inducements to a state agency, and other unlawful acts. . . ." [9] Reliant argues that these claims are barred by the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine "allows individuals or businesses to petition the government, free of the threat of antitrust liability, for action that may have anticompetitive consequences. *Noerr-Pennington* protection is grounded on the theory that the right to petition guaranteed by the First Amendment extends to petitions

---

[9]Plaintiffs assert an independent state cause of action for this alleged intentional interference with business relations. They also assert this conduct violates the Sherman Act.

for selfish, even anticompetitive ends." *Greenwood Util. Comm'n v. Miss. Power. Co.,* 751 F.2d 1484, 1497 (5th Cir. 1985). In response, Plaintiffs aver the sham exception to the *Noerr-Pennington* doctrine applies to Reliant's activities. Indeed, the *Noerr-Pennington* doctrine does not protect activities that are merely a sham to cover attempts by an actor to interfere with a competitor's business relationships. *Id.* at 498. The sham exception "applies to defendants who use the process as an anticompetitive weapon, rather than those who genuinely seek to achieve an intended result." *Bayou Fleet, Inc. v. Alexander,* 234 F.2d 852, 862 (5th Cir. 2000)(citing *City of Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 380 (1991)). Here, Plaintiffs' complaints, as they relate to their federal claims, stem from the fact that Reliant obtained exclusive GLO contracts. Plaintiffs do not allege that Reliant merely sought the contracts as a sham intended to interfere with Plaintiffs' ability to contract with the GLO. Thus, because Defendants actually obtained the GLO contracts, Reliant's activities do not fit within the sham exception of the *Noerr-Pennington* doctrine, and, accordingly, the doctrine bars Plaintiffs' federal antitrust claims against Reliant based on Reliant's relationship with the GLO. *See id.*

Given the foregoing, the Court concludes that all Plaintiffs' federal claims for damages are barred and must be dismissed.

Equitable Relief

Defendants argue that Plaintiffs' claims for equitable relief are also barred by the filed rate doctrine. This issue appears to be one of first impression in the context of the Texas market. *TCE*, unlike the instant case, did not involve claims for equitable relief. However, the Fifth Circuit noted in dicta that "defendants who engage in anticompetitive activities based on filed rates are 'still subject to scrutiny under the antitrust laws by the Government and to possible criminal sanctions or equitable relief." *Tex. Commercial Energy*, 413 F.3d at 508 (quoting *Square D Co.,* 476 U.S. at 422).

Case law from other circuits indicates that although equitable relief is available even where claims for damages are barred by the filed rate doctrine, such equitable relief is available with respect to only a very narrow range of activity. *See, e.g., Town of Norwood, Mass. v. New England Power Co.,* 202 F.3d 408 (1st Cir. 2000); *Marcus v. AT&T Corp.,* 138 F.3d 46 (2d Cir. 1998). For example, in *Norwood,* plaintiffs sought declaratory and injunctive relief that would have required defendant to provide plaintiffs with wholesale rates defendant provided to other entities. *Town of Norwood,* 202 F.3d at 419. The First Circuit held that such relief would require alteration of FERC approved tariffs and was therefore impermissible. *Id.* at 420. In *Marcus,* the plaintiff sought an injunction requiring AT&T to notify the public about its policy of rounding up its charges. *Marcus,* 138 F.3d at 59. The Second Circuit held that

because the court would not have to resolve the reasonableness of the rounding up policy, which could still be determined by the agency, the filed rate doctrine would not necessarily bar such relief if plaintiffs could prove the fraud claim on which the injunctive relief was premised. *Id.* at 62-63. However, the Court determined that plaintiffs could not prove fraud as a matter of law. *Id.* at 62.

Both *Norwood* and *Marcus* indicate that the injunctive relief sought cannot unduly infringe on the rate setting authority of the agency. In addition to the aforementioned authority, the Court finds highly persuasive *In Re California Wholesale Electricity Antitrust Litigation*, 244 F. Supp. 2d 1072 (S.D. Cal. 2003). There, plaintiffs asked the court to "order defendants to 'immediately cease all acts of unlawful and unfair competition and enjoin defendants from continuing to conduct business via the unlawful and unfair business acts or practices. . . .'" *Id.* at 1078. The court, in refusing to grant such relief, recognized that "[i]ssuance of the injunction sought by Plaintiff would impose judicial oversight of all Defendants' actions, thereby effectively changing the rules established by FERC for participating in these markets. The filed rate doctrine bars this result." *Id.*

Here, Plaintiffs' claims for equitable and injunctive relief would require the Court to engage in continued oversight of the Texas energy market. Moreover, such relief would require the Court to determine the appropriateness of the rates charged by

Defendants and unduly infringe upon the rate setting authority held by the PUCT. Plaintiffs' request for equitable relief cannot be separated from acts affecting the rates Defendants' charge for energy, which in turn, are governed by the PUCT. Essentially, Plaintiffs ask the Court to step into the shoes of the PUCT and modify the rules for market participation. As the Fifth Circuit recognized in *TCE,* the PUCT has been given the responsibility to ensure reasonably priced electricity, ensure conditions are not unreasonably preferential, prejudicial, discriminatory, predatory, or anticompetitive, and given the authority to seek injunctions or civil penalties to remedy market abuses. *Tex. Commercial Energy,* 413 F.3d at 506 (citing TEX. UTIL. CODE ANN. §§ 39.010(a)(1), 35.004(e) and 39.157(a)). Thus, Plaintiffs are asking the Court to do what the PUCT is authorized and empowered to do, which would affect market rates and infringe upon the powers of the PUCT. *See id.* This type of equitable relief therefore falls outside the narrow scope of equitable relief unaffected by the filed rate doctrine. *See Town of Norwood,* 202 F.3d at 419*; Cal. Wholesale,* 244 F. Supp. 2d at 1078. Accordingly, Plaintiffs' claims for equitable relief must be dismissed.

State Law Claims

As the Court has dismissed all Plaintiffs' federal claims, and the Court's jurisdiction is based on federal question jurisdiction, the Court must determine whether or not to exercise supplemental jurisdiction over Plaintiffs' state claims. In cases

involving both state and federal claims, state claims fall within the supplemental jurisdiction of the federal courts. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1988). A court can decline to exercise supplemental jurisdiction after dismissal of all federal claims. 28 U.S.C. § 1367(c)(3).

Upon consideration, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, including the state antitrust claims. The issues involved in this case are of significant importance to the state of Texas. Thus, the Court declines to examine issues that could be decided in another forum. Accordingly, the Court dismisses all Plaintiffs' state law claims without prejudice. Given the foregoing the Court hereby

ORDERS that Defendants' Motion to Dismiss (Document No. 131) is GRANTED IN PART. All Plaintiffs' federal claims are DISMISSED. The Court further

ORDERS that, as the Court declines to exercise supplemental jurisdiction over Plaintiffs' state claims, Plaintiffs' state claims are DISMISSED without prejudice.

SIGNED at Houston, Texas, on this 6th day of December, 2005.

*David Hittner*
_____
DAVID HITTNER
United States District Judge